Estate of Robert M. TRAYLOR, Sr. *v.* John
T. HARMON

78-136                                    576 S.W. 2d 201

Opinion delivered January 29, 1979
(In Banc)
[Rehearing denied February 26, 1979.]

*Pearce & Robinson,* for appellant.

*Paul F. Henson* and *Jimmy Eaton,* for appellee.

GEORGE ROSE SMITH, Justice. On April 1, 1974, Robert
M. Traylor, Sr., executed a $20,000 installment note to the
appellee, John T. Harmon. A payment of $5,000 was due in
one month, $5,000 in two months, and the other $10,000 in
three mnths. Traylor paid only $3,000 on the note. After
Traylor's death Harmon, on April 9, 1976, filed a claim
against his estate for the balance due on the note, with in-
terest. The estate resisted the claim on the ground that the in-
debtedness was part of a usurious transaction. This appeal is
from a judgment of the probate court denying the plea of
usury and allowing the claim.

As nearly as we can tell from the abstract of the record,
the note now in question was part of the last of a series of
maneuvers by which Traylor sought to protect his interest in
a piece of real property in Little Rock. The property ap-
parently was formerly owned by Traylor or by his company,
Arkansas Warehouse Corporation, and was encumbered.
The title was conveyed to High Motel Properties, Inc., with

Traylor preserving his interest by means of an option to repurchase. Traylor solicited the assistance of three men, acting as T.G.W., Inc., to exercise the option to repurchase. That purpose was accomplished by means of a consent decree in a pending chancery case to which all concerned were parties. Apparently T.G.W. exercised the option and bought the property.

The consent decree, dated November 14, 1973, recited that a warranty deed executed earlier by High Motel Properties had vested fee simple title in T.G.W. The decree then provided that until April 1, 1974, Arkansas Warehouse Corporation (Traylor's Company) would have an option to purchase the property for $57,000, plus interest from the preceding September 1. Thus the decree gave Traylor an additional four and a half months in which to repurchase the property.

Traylor and Harmon, a lawyer, were friends. On April 1, 1974, the last day for the exercise of the option, they consummated the agreement giving rise to the installment note now in question. Traylor was represented by his own attorney. Harmon had two associates in the matter, Patterson and Lafferty. About $60,000 was needed for the exercise of the option. It was agreed that Patterson, as trustee, would raise $40,000 by means of a mortgage on the property and Harmon would raise the remainder, making their total investment about $60,000. Traylor, for a consideration of $21,000, was given an option to repurchase the property (from Patterson, trustee) at any time until August 31, 1974, for $47,500. As consideration for the option to purchase Traylor paid Patterson $1,000 and executed the $20,000 installment note to Harmon. Traylor was not able to exercise the option, which eventually expired by its terms. Patterson, who held the title as trustee in the ratio of one fourth for himself, one fourth for Lafferty, and one half for Harmon, sold the property to a third person for about $60,000. Harmon later filed his present claim against Traylor's estate.

The charge of usury is asserted in this manner: Harmon, Patterson, and Lafferty were to invest about $60,000 in the property, largely by borrowing the money elsewhere. Traylor

was to pay $21,000 for an option to buy the property for $47,-500. Thus Traylor, had he been able to exercise his option, would have paid $68,500 for property which Harmon and his associates had acquired for $60,000. It is now asserted that the whole transaction was actually a loan, by which the lenders were to obtain $8,500 in interest by lending Traylor $60,000 for five months (April 1 to August 31).

We do not find this argument persuasive. The case at bar is not, as counsel argue, "quite similar" to that of *Sleeper v. Sweetser,* 247 Ark. 477, 446 S.W. 2d 228 (1969). There Sweetser owed a diamond ring worth $500. He "sold" it to Cameo Jewelry for $50 and received as part of the same transaction an option to repurchase the same ring within 10 days for $55. We held that the transaction was in fact a loaning of money or a pawning of property, by which Cameo Jewelry charged $5 interest for a 10-day loan of $50, making the interest rate 1% a day.

The marked difference between that case and this one is that there Sweetser owned the ring before the transaction and was simply borrowing money at a usurious rate. Here Traylor did not own the property immediately before his transaction with Harmon, Patterson, and Lafferty. He had only an option to purchase from T.G.W., which he was unable to exercise. Evidently all the parties thought the property was worth much more than the $57,000 option price, with interest, else they would not have entered into the transaction at all. If the property was actually worth less than $60,000, Harmon and his associates could lose money in the deal. Traylor was willing to pay $21,000 for an option to buy the property for $47,500. He did not borrow any money from the other parties nor, as in *Sweetser,* incur any obligation to repay any money. We cannot say that the chancellor's finding, that the transaction was not a loan disguised as an option, is against the preponderance of the evidence.

Affirmed.